### LEWIS FOX *vs.* DAVID NATHANS.

A lease, to hold from the first day of April from year to year, so long as both lessor and lessee should agree, is not necessarily a lease for more than one year.

Where a lease is made to run from the first day of April for one year, the first day of April is not to be excluded, but the term commences on that day.

And the lease expires on the 31st day of March of the year following. Although the lessee has the right to remain in possession all of that day, he has no right to remain longer.

A notice in such a case to quit on the 31st day of March is good.

A special traverse, as originally devised and used, was simply a mode by which the pleader, in the inducement, spread his own right or title upon the record, adding to this implied denial of the opposing claim a direct denial under the *absque hoc.*

The inducement in such a traverse must on its face give the pleader a good right or title, or the whole plea will be bad.

WRIT of error from the judgment of a justice of the peace in a proceeding of summary process; reserved by the superior court for the advice of this court. The case is sufficiently stated in the opinion.

*H. B. Munson* and *Stevens,* for the plaintiff in error.

*Doolittle* and *C. E. Baldwin,* for the defendant in error.

DUTTON, J. The proceedings in this case were under the statute regarding summary process. The complaint, in most respects, is of the usual form.

The defendant, with the hope of gaining an advantage by it, adopted an unusual course, and probably one not contemplated by the legislature. Instead of simply denying the allegations of the complaint, thereby leaving to the jury to find, in the language of the statute, whether the possessor was the lessee of the complainant, whether he held over after the termination of the lease, whether notice to quit had been given, and whether the lessee remained in possession after the time specified in the notice, the defendant interposed a plea of the most technical character ever adopted in special pleading, ending with a traverse of only one averment in the complaint, adopting what has been called the barbarous formula *absque hoc.*

If this mode of pleading required an apology, as it must be admitted that it is an awkward way of denying a fact, it might be said that, until within a few years, it was, at least in England, a very common mode of forming an issue. Although at first it seems to have been confined to special traverses, it was afterwards extended to cases of mere general denials. Stephen's Pl., 180. The peculiarity of it consisted mainly in this, that one party alleged that an act was done with a certain qualification, to which the other replied that it was done *absque hoc,* without it. This was the only affirmative and negative by which the issue was formed. The defendant, for instance, to a declaration alleging an assault and battery, would plead, admitting the fact, that it was done with the qualification of self-defence. The plaintiff, reiterating in general terms his charge, would reply that it was done *absque hoc,* without this qualification of self-defence. 2 Chitty Pl., 690. In this way the question as fairly, though not in as simple a manner, was presented for trial, as if the defendant had alleged that he struck in self-defence and the plaintiff had replied that he did not.

The defendant in the present case adopted the *absque hoc* in a special traverse. Where this is done it is a well settled rule of pleading that there must be an inducement preceding the *absque hoc,* containing allegations of new matter which give to the defendant an apparently good right or title, or the

whole plea will be bad. There is reason to believe that this form of pleading was originally adopted in good faith, and that the reproaches which have been cast upon it have been owing in a great measure to ignorance, or to the abuse of it by legal chicanery. It was a convenient mode of spreading all the facts upon the record. When fairly used the defendant in his plea would set out truly his title. The plaintiff in the inducement of a special traverse, would set out truly his opposing title, denying the title of the defendant by an *absque hoc.* Both titles being spread upon the record, the defendant by demurring could present to the court the question of law, whether the plaintiff's title as set forth in the inducement was or was not superior to his as set forth in the plea. In this way, if both parties presented their titles truly, a jury trial could be avoided.

The present case furnishes an illustration of this operation of a special traverse. The plaintiff in his complaint set out a parol lease, which according to its terms, as he claimed them to be, had terminated. The defendant in his plea sets out a written lease, which, according to the construction which he puts upon it, had not terminated. He then concludes with a traverse of the plaintiff's lease. The plaintiff could not truthfully deny that he was party to the lease which the defendant alleges, and that it is set out correctly. If there was such a lease and if it gave the defendant a right to continue in possession, it would clearly supersede or merge the parol lease if there was one, and the defendant would appear to have the best right to the possession of the property. All the plaintiff need do, therefore, would be to demur. It would be of no use to him to join issue on the traverse, because on the trial of that the defendant, by producing the written lease, would prevail.

We come then to the question, does the lease set out in the defendant's plea show that he had the right to remain in possession of the premises. The lease was dated October 12th, 1857. It was to run three years from the first day of April, 1858. This complaint is dated April 4th, 1864, and the notice is alleged to have been given to quit on the 31st day of March,

1864. So far it appears that the lease had been at an end three years and over. But the defendant claims that there is this further clause in the lease :—" And it is further agreed, that in case said lessee shall, with the consent of the said lessor, at any time hold over said premises beyond the period at which this lease terminates by lapse of time, then the said lessee shall hold said premises upon the same terms and under the same stipulations and agreements as in this instrument contained ; and this agreement in writing is at all times during the period the said lessee shall occupy said premises to be referred to as evidence of the conditions, stipulations and agreements under which he occupies the same." The defend-ant insists that as it is admitted that he is still in possession, he still holds under this lease. We can not give our assent to this claim. The written lease gave the defendant no right to remain after three years from the first of April, 1858. If he claims a right to remain longer, he must show it by some evidence outside of this lease. The lease itself speaks of its own termination by lapse of time and of the defendant's hold-ing over. A tenant does not hold over till after the lease is terminated. Besides, the defendant by the terms of the instrument was not to hold over without the consent of the lessor. He shows no right to remain until he shows that he has obtained that consent. But he has not even averred it. He could not regularly aver it, for that would not have been an averment of new matter, but an informal denial of the plaintiff's averment that he gave him notice to quit. If the defendant held over, he held even by his own showing under a parol lease, and his plea is inconsistent and repugnant, as it shows that he did hold under a parol lease and yet denies that he had any such lease. The demurrer therefore to the plea must be sustained.

But the defendant next insists that if his plea is bad the complaint is also bad. If it is true that the complaint is bad in substance and is not aided by the plea, the demurrer must still be sustained.

The first defect is claimed to be, that the allegation is that the lease was from the first day of April, 1863, from year to

year, so long as both lessor and lessee should consent and agree to the continuance of the tenancy. This, it is insisted, shows a tenancy for more than one year, and Taylor's Landlord and Tenant, Ch. 3, §§ 77, 82, and several English cases, are referred to. But it will be found on examination that the doctrine applies only where from the whole lease it is apparent that the parties contemplated a lease of more than one year, without specifying the whole duration of the lease. In such cases it is held that the lease would last at least two years. But the mere expression "from year to year" does not necessarily imply more than from the commencement of one year to the commencement of another.

It is further insisted that the allegation of the notice to quit is bad. The lease is alleged to be for a year from the first of April. The defendant insists that the first of April is excluded, and that consequently the defendant was not bound to quit till the first day of April of the next year. It is not denied that if the defendant was bound to quit on the 31st day of March, the notice so far as this question is concerned is right. To this claim the plaintiff gives two answers. In the first place he insists that the defendant had no right to stay into the first of April. We are inclined to think that by the common understanding of the community, at least in this state, a lease from the first of April would commence on the first of April. In most of our cities, moving day is either April 1st or May 1st. One tenant goes out and the other goes in on that day. Yet leases almost invariably run from the first of April or May. It never has been supposed that the ingoing tenant by entering that day was guilty of any intrusion or trespass. In the second place, he insists that it is obvious from the whole case as presented that both parties set up the same lease. The defendant sets out an instrument which he can not consistently controvert, by the stipulations of which he was to have no notice to quit. If there is any defect therefore in this averment it is cured by the plea.

It has been also urged that if the lease did terminate on the 31st day of March, the notice to quit on that day was wrong, as the defendant would have a right to stay the whole

of that day.   If a note is due on the 31st of March, the payee it is said can not sue till the first of April.   But the two cases are not parallel.   Although the lessee would have the right to remain in possession the whole of the 31st of March, he has no right to remain a moment longer, and consequently he must leave on that day, although he may do it if he chooses the last moment of the day.   Consequently it would be proper to give him notice to quit on the 31st of March.

We advise that there is no error in the record.

In this opinion the other judges concurred.